## Thurman v. Samuels, et al.

(Decided April 16, 1912.)

Appeal from Nelson Circuit Court.

Land—Ownership of—Action for Trespass—Evidence.—In an action for trespass committed by cutting and removing timber from land, where the defendant admitted the cutting, but alleged ownership of the land, the evidence showing he was not entitled to the land, he was properly held answerable for the value of the timber which he took from it.

C. T. ATKINSON for appellant.

KELLY & CHERRY for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

L. B. Samuels and others instituted an action in the Nelson Circuit Court against Jasper Thurman and C. Q. Shepherd in which they sought to recover damages of the latter for a trespass committed by cutting and removing a certain lot of timber from a tract of land which plaintiffs alleged they owned. The defendants filed separate answers, but as the action as to Shepherd was dismissed, only the defense set up by Thurman need be noticed.

He alleged that he was the owner of the land, admitted the cutting of timber, but denied that he had cut as much as plaintiffs charged. The case resolved itself into a question of the ownership of the tract of land from which the timber was cut, and upon a trial of this question before a jury plaintiffs recovered a verdict for $225. Judgment having been entered thereon, the defendant appeals.

Plaintiffs' claim of title to the land in question is as follows: Their father acquired it in the division of the lands of Lewis Duvall, and upon the death of their father, although his estate was partitioned among his heirs-at-law, by oversight this land was not taken into account by the commissioner and was not divided, and hence remains a part of the estate of their father. On the other hand, appellant insists that, as it was a part of the Duvall farm, it was in fact set apart by the commissioners to T. P. Samuels and, by mesne conveyances, passed from said T. P. Samuels to him.

The record before us is not complete, as reference is made to many exhibits and records that were introduced in evidence which are not copied into the transcript. But from the record before us it is apparent that the land in controversy is not covered by appellant's deed. This is practically conceded; but he insists that it was omitted therefrom by oversight or omission, and that the commissioners intended to convey to his vendor the entire Duvall farm, of which this was a part, and that, following said partition, his vendor, T. P. Samuels, took possession of said farm, including the land from which the timber was cut as well as that covered by the deed, and held it for a number of years, when he sold it, and, by mesne conveyances, it passed to appellant.

It appears that W. T. Samuels in his lifetime became the purchaser of 138 acres off of the Duvall farm at master commissioner's sale during the lifetime of said Duvall; that, after his death and before his landed estate was divided, he purchased certain undivided interests in the remainder of the land owned by Duvall, and when the Duvall land was divided among his heirs the said T. W. Samuels had allotted to him two parcels thereof, one of twenty-six acres and another of thirty-five acres, and a commissioner's deed was made to him for each of these tracts. He held them for a number of years, though it does not appear that the deed for the twenty-six acre tract was recorded. At the time of his death he was the owner of several tracts of land individually and several others jointly with different members of his family. A suit was brought for the allotment of dower and partition of his real estate, including such as was owned jointly by himself and other members of his family. An attempt was made in the petition for such partition to set out at length the various tracts of land owned by him, as the Code provides, but evidently through oversight, this twenty-six acres was omitted and the Commissioners, in the partition of his estate, evidently did not take this twenty-six acres into account, or, if they did, they made no mention of it in their report. The only portion of the Duvall farm which they were directed in the order of court to take into consideration in the division of the landed estate of T. W. Samuels was the tract containing about 138 acres which he had bought at Commissioner's sale. This was allotted to T. P. Samuels, and is described in the Commissioner's re-

port as the Duvall tract. It appears that, when this land was sold by the commissioner of the Bullitt Circuit Court, it was cut off of a larger tract and described so it could be easily identified and the report of division accompanied by a plat and survey. This same description was used in the petition wherein the heirs of T. W. Samuels sought to have his estate divided; and likewise in the deed made by the commissioner to T. P. Samuels, and in the deed from T. P. Samuels to his vendee; and also in the deed under which appellant acquired title.

As opposed to this, appellant seeks to make as a basis for his claim the statement in the petition for partition that T. W. Samuels owned the Duvall farm, and the statement in the report of division that the Duvall farm was allotted to T. P. Samuels, and it is most earnestly urged that, because certain lands are designated as the Duvall lands, therefore all of the land which was owned by T. W. Samuels and which he acquired in any manner from Duvall or his estate is covered by that description.

We would not so hold. As stated, the title to these two tracts of land was acquired by T. W. Samuels at different times and through different sources. The 138 acre tract was sold under order of the Bullitt Circuit Court some years before the death of Duvall, and the twenty-six acre tract was acquired in the partition of the Duvall estate, the said T. W. Samuels having purchased the interests of one or more of his heirs. The Code provides that, in a suit to allot dower and partition the real estate owned by decedent among his heirs, the petition must contain a description of the land, a statement of the names of those having an interest in it, and the amount of such interest, with a prayer for the division or allotment, and that when, upon such petition, all of the parties in interest are brought before the court, it is the duty of the court to appoint commissioners who, after being sworn, shall survey and allot to the parties their respective interests in the land and make report thereon to the court; and if this report is confirmed, deeds shall be made to the respective parties in accordance therewith. Clearly the commissioners are not authorized to partition any lands other than those described in the pleading; but if, after their appointment, they should discover that the decedent owned other lands, and they should take these other lands into con-

sideration in making their division, their report should show this fact, and that the lands which they had discovered and which were not described in the pleadings had been allotted by them to some one or more of those entitled thereto.

The report in the case before us recites that they had taken into consideration in making their division certain practically worthless lands owned by the decedent, but these lands so considered by them are not described, and from the report it could not be said that they referred to the land in contest. On the contrary, it is fairly inferable that the worthless lands spoken of in their report referred to land other than this, for from the evidence in this case it is apparent that this land in controversy could not properly be described or spoken of as worthless land. It had valuable timber upon it and utterly fails to meet that character of description. The commissioners did have before them a deed which had been made to the decedent for a part of the Duvall farm. That portion was accurately described in the deed and, with this deed before them, it is fair to presume that, when they spoke of the Duvall land in their report, they referred to the land which the decedent had acquired at the Commissioner's sale and which was covered by this deed. The best evidence that they did refer to this particular tract is found in the fact that in their deed of partition they described the land as containing 138 acres. Now, if in their division of decedent's estate they had intended to take into account other lands, they would certainly not have reported the whole as containing only 138 acres when one tract contained that much. Instead of presuming that they omitted to include the description of this twenty-six acres in the deed to T. P. Samuels, a more reasonable presumption is that they were not aware that this twenty-six acres was owned by the decedent at all. There was nothing in the papers before them to show that he did, and no evidence is offered even in any way suggestive that they were advised that decedent did own it, and when they spoke of the Duvall tract they spoke of it in the same sense in which it was referred to in the petition, i. e., they meant the 138 acre tract.

Appellant testifies that when he bought the land he supposed that he was getting all of the land which came to decedent, T. W. Samuels, from the Duvall estate. But

this proposition is directly in conflict with the deed under which he claims, and T. P. Samuels, who conveyed the land, testifies that he understood he was selling only the 138 acre tract.

And here it may be observed that objection was made during the trial to this character of proof; that is, it was insisted by appellees that, as appellant was claiming under his deed, he would not be heard to state that he understood he was getting other and different land from that described therein. But for the purposes of this case we do not deem it necessary to enter into a consideration of this question, for, taking all of the evidence that was offered by appellant, we are still of opinion that he failed to show himself entitled to this land. Not being entitled to the land, he was properly held answerable for the value of the timber which he took or caused to be taken therefrom, and this the jury fixed at $225; and there is abundant evidence to support this finding.

The instructions fairly and fully presented the issue as made by the pleadings, and we have discovered no error in the conduct of the trial of which appellant may justly complain.

Judgment affirmed.