**OLD COLONY INS. CO. et al. v. REYNOLDS et al.**

Court of Appeals of Kentucky.

March 20, 1953.

T. M. Galphin, Jr., and Ogden, Galphin & Abell, Louisville, Wilson & Wilson, Owensboro, Malcolm Y. Marshall, Louisville, for appellant.

Hubert Meredith and Thomas E. Sandidge, Owensboro, for appellee.

CLAY, Commissioner.

Appellants had issued to appellee several "builder's risk" insurance policies which covered a tobacco warehouse under construction and insured against "direct loss by windstorm". On the night of June 18, 1949, the warehouse, then nearing completion, collapsed. Appellee recovered approximately $17,000 for the loss.

On this appeal appellants contend: (1) there is no substantial evidence the loss was caused by a windstorm; (2) the evidence is overwhelming that the collapse of the warehouse was caused by faulty and improper construction; and (3) the evidence of damage was either incompetent or insufficient.

█ 1. Appellants contend that a "windstorm" must be something of a violent and unusual nature and must constitute "an outburst of tumultuous force". Many courts have labored to draw the distinction between a wind and a windstorm. In the recent case of Druggist Mutual Insurance Company v. Baker, Ky. 1952, 254 S.W.2d 691, 692, we defined a windstorm as "a wind of sufficient violence to be capable of damaging the insured property, assuming the property to be in a reasonable state of repair".

█ On the night the warehouse collapsed there was a heavy rainstorm. One witness described the condition as "stormy weather". Another testified that the wind "was blowing hard". Others stated that there was "a strong wind" and that it was "unusually strong". While it appears that a hard, blowing rain was the feature of that evening's weather, there was sufficient evidence from which a jury might reasonably conclude that the wind was of sufficient violence to cause the collapse of the warehouse. There was no evidence the wind caused damage to other property, but we think our above quoted definition would authorize a jury to find that appellee's damage was caused by a risk appellants had insured against. They were not entitled to a directed verdict on this issue.

**2.** Appellants next contend the proof was overwhelming that the warehouse collapsed solely because of its faulty construction. Evidence was introduced to show that the footings for the upright posts were laid in a loose dirt fill; that they were not properly anchored; that they were not adequately braced at the top; and that exposure to the weather had further weakened the structure. There was also evidence the outside walls had shifted out of line. The manner in which this building collapsed indicated that it may have been the result of improper construction rather than the exertion of an effective outside force.

However, we must bear in mind that these policies insured against risks during the course of construction, and during that time every part of the building would not necessarily be as structurally stable as the completed job. While appellants make a very strong argument that the collapse of the building was the result of faulty construction, we cannot determine such fact as a matter of law. It was likewise a question for the jury.

However, we do not think that this issue, perhaps the most important one in the case, was properly submitted to the jury. Appellants offered an instruction to the effect that if the warehouse collapsed or was damaged "from any other cause or causes than by windstorm", then the jury should find for them. This instruction was refused, and the court instructed the jury that if the building was damaged or injured by windstorm (as defined in a subsequent instruction), the jury should find for appellee. The instruction also stated that unless the jury so believed, it should find for appellants.

█ Ordinarily when the defense is a denial, a simple statement of the converse of the instruction under which the jury may find for the plaintiff is sufficient. West v. Butler's Executor, 248 Ky. 404, 58 S.W. 2d 662. In that case, however, the court approved a separate instruction which affirmatively set forth the theory of the defense. The character of the suit and the significance of the issue are important in determining whether or not the defendant's theory of the case is fairly presented.

364

It is well recognized that a litigant is entitled to have the jury consider every material issue raised by the pleadings and the evidence. Rogers v. Abbott, Ky. 1951, 240 S.W.2d 840. It was there held reversible error for the court to ignore that right where the defendant had offered an instruction covering his theory of the defense. Similarly in Myers v. Franklin, 236 Ky. 758, 34 S.W.2d 234, 236, the judgment was reversed because the court failed to submit "the defendant's side of the case" by a proper instruction. Other cases to the same effect are: New York Canners, Inc., v. Rucker, 238 Ky. 204, 37 S.W.2d 31; Federal Surety Company v. Guerrant, 238 Ky. 562, 38 S.W.2d 425; North American Acc. Ins. Co. v. McAlister, 290 Ky. 88, 160 S.W.2d 385. The latter two cases involved suits on insurance policies.

The kind of instruction we have recently approved for this type of case assumes that the building insured is reasonably stable. The risk covered is loss or damage caused by an external force of some violence, not inherent defects. Where, as here, the building is being newly erected, the insurer has the right to expect a reasonably proper job of construction. Otherwise the coverage would include collapse or damage resulting from poor workmanship if even a slight wind was blowing at the time. Clearly the condition of the building, where an issue is raised concerning it, is an important factor in determining whether or not a "windstorm" actually and directly caused the damage.

The instructions given, however, made no reference whatever to the condition of the building. Yet appellants' principal defense was that the warehouse was being improperly constructed and that this, rather than a windstorm, was the efficient cause of its collapse. Under the circumstances appellants were entitled to have their theory of the case presented to the jury in a separate and affirmative instruction. While the instruction offered by appellants encompassed this defense, a better form would limit it to the alleged faulty construction since appellants presented no evidence of any other cause of collapse. Because of the failure to give this affirmative instruction, the judgment must be reversed.

3. As there may be additional or different evidence presented on a new trial, we do not deem it necessary to decide whether or not appellee's testimony was sufficient to support the award of damages. It was, in general, competent. We will say in passing that the question of sufficiency may be avoided by the introduction of additional proof supporting it.

The judgment is reversed, with directions to grant appellants a new trial, and for further consistent proceedings.